IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Anthony E. Gause, as Personal Representative of the Estate of Anthony Gause, Anthony E. Gause, as Personal Representative of the Estate of Karen C. Gause,<br><br>Plaintiff,<br><br>vs.<br><br>Metropolitan Life Insurance Company,<br><br>Defendant. | Case No.: 4:25-cv-03910-JD<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court on Defendant Metropolitan Life Insurance Company's ("MetLife") Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (DE 7). Plaintiff, Anthony E. Gause, as Personal Representative of the Estate of Anthony Gause, and as Personal Representative of the Estate of Karen C. Gause ("Plaintiff") asserts claims for negligence, negligent misrepresentation, and promissory estoppel arising from the decedent's alleged continuation of life insurance coverage under the South Carolina Public Employee Benefit Authority ("PEBA") group policy.

MetLife moves to dismiss the Complaint, asserting, among other things, that the economic loss rule bars Plaintiff's tort claims. Plaintiff filed a Response in Opposition (DE 11), and MetLife filed a Reply (DE 12). The matter is now ripe for review. For these reasons, MetLife's motion to dismiss is granted (DE 7).

1

## I.     BACKGROUND[1]

According to the Complaint, Anthony Gause ("Decedent") was employed by the State of South Carolina and received group life insurance coverage through a policy issued by MetLife to PEBA. (DE 1-1 ¶¶ 4–5.) Decedent retired effective January 1, 2023, at which time his group coverage under the policy ended. (*Id.* ¶ 5; *see also* DE 7-1 at 2–3.)

PEBA's Insurance Benefits Guide (the "Guide"), which Plaintiff cites and attaches, describes the process by which eligible retirees may elect to continue group life insurance coverage by completing a continuation form mailed by MetLife following PEBA's transmission of an eligibility file. (DE 1-1 ¶ 5 & Ex. A.) On February 15, 2023, MetLife mailed Decedent a "Notice of Group Life Insurance Privilege," advising him of his option to convert or continue coverage and instructing that any enrollment must occur within 31 days of the date of the notice or the retirement date, whichever was later. (DE 1-1 Ex. B.)

Decedent passed away a day later, on February 16, 2023. (DE 1-1 ¶ 6.) On March 2, 2023—after Decedent's death—Plaintiff completed and submitted a Retiree Life Continuation Enrollment Form to MetLife, signing the form as Decedent's

---

[1]     This is Plaintiff's third lawsuit concerning the same underlying life insurance coverage. In the prior action, the Court held that no coverage existed because Decedent neither died within 31 days of the termination of coverage nor submitted a valid continuation or conversion election before his death. *See Gause v. Metro. Life Ins. Co.*, 2024 WL 4665155, at *3 (D.S.C. Nov. 4, 2024). The Court dismissed all contract-based claims. *Id.* Plaintiff then filed this action on behalf of the Estate of Anthony Gause, asserting tort theories—including negligence, negligent misrepresentation, and promissory estoppel—premised on MetLife's alleged failure to timely furnish continuation materials and its subsequent written confirmation of coverage (DE 1-1).

"Attorney-in-Fact." (DE 1-1 ¶ 6 & Ex. C.) Plaintiff later acknowledged that he lacked authority to submit the form post-mortem because the power of attorney extinguished upon Decedent's death. (*Id.* ¶ 6 n.1.)

On September 2, 2023, MetLife issued correspondence titled "Group term life insurance coverage confirmation—Please review," which reflected continued coverage effective January 1, 2023, and MetLife subsequently issued premium notices. (DE 1-1 Exs. D, E.) Plaintiff contends these communications reflect MetLife's negligence and misrepresentations concerning Decedent's continuation rights.

## II.  LEGAL STANDARD

**Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550

U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2), Fed. R. Civ. P.).

### III.  DISCUSSION

Plaintiff asserts three tort-based causes of action—negligence, negligent misrepresentation, and promissory estoppel—arising from MetLife's alleged failure to provide continuation materials timely and from subsequent correspondence showing that continuation coverage was effective. These claims, although framed in tort terms, arise from Plaintiff's contention that MetLife's alleged misconduct led to the wrongful denial of life insurance benefits that were purportedly due under the decedent's insurance policy.

MetLife moves to dismiss on several grounds, including (1) the economic loss rule, (2) the absence of any independent tort duty owed to Plaintiff outside of the contractual relationship, and (3) Plaintiff's failure to plead facts that plausibly support any of the three tort theories. The Court agrees that Plaintiff has failed to state a claim upon which relief may be granted.

A.     **The Economic Loss Rule bars Plaintiff's Claims**

Under South Carolina law, the economic loss rule bars tort actions "where duties are created solely by contract." *Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 788 (D.S.C. 2013).[2] The doctrine is intended to preserve the boundary between contract and tort by preventing parties from recasting contract-based disputes as tort claims to obtain remedies unavailable under the contract.

The economic loss rule is not applied mechanically. Where a defendant has breached a legal duty arising independently of contract, tort recovery may be available even when the plaintiff's damages are purely economic. *See Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 345-46, 384 S.E.2d 730, 737 (S.C. 1989). Whether the rule applies, therefore, turns on the source of the duty allegedly breached, not merely the nature of the damages claimed.

Although the economic loss rule does not bar tort claims in every case involving contractual relationships, South Carolina courts make clear that the dispositive inquiry is whether the defendant owed a duty arising independently of the contract.

---

[2]     The Court acknowledges that the economic loss rule is sometimes described as an affirmative defense. Nevertheless, dismissal under Rule 12(b)(6) is appropriate where the defense "clearly appears on the face of the complaint" or in documents integral to it and whose authenticity is not disputed. *See Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250–51 (4th Cir. 1993) (affirming dismissal where the claim failed as a matter of law); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (court may consider integral attachments without converting the motion). Here, the Complaint expressly bases all alleged duties on the administration of continuation rights contained in the insurance policy and the PEBA benefits framework, and the damages sought are solely the denial of life-insurance proceeds. Because the contractual documents incorporated into the pleadings foreclose any independent tort duty, the Court may properly address the economic loss rule at the Rule 12(b)(6) stage.

*See Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d at 736-37; *see also Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 395–96, 520 S.E.2d 142, 153 (1999). Where the alleged duty exists solely because of the parties' contractual relationship, tort recovery is barred even if the plaintiff elects to plead in negligence or misrepresentation.

Here, each duty Plaintiff seeks to impose—whether characterized as a duty to advise, to timely provide continuation materials, or to correctly administer post-retirement coverage options—derives entirely from the group life insurance policy and MetLife's role in administering that policy. Plaintiff alleges no statutory duty, fiduciary relationship, or voluntary undertaking by MetLife that would give rise to obligations independent of the policy's terms.

Nor do Plaintiff's allegations concerning post-death communications, billing activity, or internal administrative processing give rise to an independent tort duty. Such conduct, even if assumed to be inaccurate or inconsistent, occurred after Decedent's death and therefore could not have induced reliance or altered Decedent's coverage status. As a matter of law, post-loss conduct cannot create a tort duty to provide insurance benefits where no coverage existed, and no legally effective act could have brought coverage into existence.

Here, Plaintiff alleges negligence and negligent misrepresentation arising from MetLife's alleged failure to properly administer continuation and conversion options under the group life insurance policy and from alleged misstatements concerning the availability of coverage. These allegations identify no duty owed by

6

MetLife independent of the policy. To the contrary, the alleged duties—providing notices, processing enrollment materials, and confirming coverage status—arise directly from MetLife's role as insurer and administrator of the group policy. Without the policy, no such duties would exist.

South Carolina recognizes negligent misrepresentation as a limited tort theory requiring a false representation of a present or pre-existing fact, justifiable reliance, and pecuniary loss proximately caused by that reliance. *See Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166–67 (S.C. 2003). Evidence of a mere broken promise, statements concerning future conduct, or disappointment in contractual expectations is insufficient as a matter of law. *Id.*

Accepting the well-pleaded allegations of the Complaint as true, Plaintiff does not allege that Decedent relied on any representation by MetLife before the termination of coverage or before his death. Decedent's group life coverage ended on January 1, 2023, and Decedent passed away on February 16, 2023. All alleged reliance and alleged harm stem from Plaintiff's post-death submission of enrollment materials and from MetLife's subsequent administrative communications. Such allegations cannot establish justifiable reliance or proximate causation for purposes of negligent misrepresentation under South Carolina law.

Plaintiff also seeks only the economic benefit of life insurance proceeds— benefits that would exist solely by virtue of coverage under the policy. Where, as here, no independent duty is plausibly alleged, and the claimed damages arise entirely

7

from the absence of contractual coverage, the economic loss rule bars recovery in tort. *See Kennedy*, 384 S.E.2d at 737.

To the extent Plaintiff contends that MetLife's post-death administrative conduct, billing activity, or coverage confirmations created or reinstated life insurance coverage, South Carolina law does not permit insurance coverage to be created by waiver or estoppel where no coverage existed at the time of loss. Allowing Plaintiff to proceed in tort on these allegations would permit precisely what the economic loss rule forbids: recovery of contractual benefits through tort theories where the alleged duties and damages are defined entirely by the contract itself.

Accordingly, Plaintiff's negligence and negligent misrepresentation claims are barred by the economic loss rule and must be dismissed as a matter of law.

## B. Plaintiff Fails to Plausibly Allege Any Independent Duty Owed by MetLife

Even assuming the economic loss rule did not bar Plaintiff's claims, each tort theory independently fails because the Complaint does not plausibly allege that MetLife owed Decedent—or Plaintiff, as personal representative—any duty arising outside the terms of the group policy. Duty is an essential element of both negligence and negligent misrepresentation. *See Steinke v. South Carolina Dep't of Labor, Licensing & Regulation* explains the governing principle: "Generally, there is no common law duty to act. An affirmative legal duty, however, may be created by statute, contract relationship, status, property interest, or some other special circumstance." 336 S.C. 373, 388, 520 S.E.2d 142 (1999). None of those sources supplies a duty here.

8

### 1. No Independent Duty Exists Under Negligence Principles

To state a negligence claim, Plaintiff must allege (1) a duty of care owed by MetLife to the decedent; (2) breach of that duty; (3) causation; and (4) damages. *See Doe v. Greenville County Sch. Dist.*, 651 S.E.2d 305, 307 (S.C. 2007). As *Steinke* and South Carolina common law make clear, the threshold question—whether a tort duty exists—is a question of law for the Court.

Plaintiff asserts that MetLife owed a duty to furnish continuation materials promptly after Decedent's retirement. But that duty does not arise from common law, statute, or the policy itself. Plaintiff relies exclusively on language appearing in the PEBA Insurance Benefits Guide, asserting that this language obligated MetLife to mail continuation forms within a particular timeframe. The Guide, however, is a publication created by PEBA, not MetLife; it summarizes benefits available to State employees. It expressly states that it "does not create any contractual rights or entitlements" and that MetLife's group policy governs all rights and obligations. (DE 7-2 at 10.)

The group life policy contains no provision requiring MetLife to send continuation materials within any fixed period, nor does it impose a general informational or advisory duty on MetLife. To the contrary, the Court has determined—when resolving Plaintiff's prior action—that continuation rights arise solely from the policy, that Decedent did not validly exercise those rights before his death, and that no coverage existed at the time of death. *See Gause v. Metropolitan Life Ins. Co.*, 2024 WL 4665155, at *3 (D.S.C. Nov. 4, 2024). Although the Court's

9

prior ruling is not dispositive of Plaintiff's newly asserted tort theories, the Court has independently examined the factual allegations of the present Complaint and concludes that Plaintiff does not allege any materially different facts bearing on the existence of coverage or the source of any alleged duty.[3]

As pleaded, the Complaint again alleges that Decedent's group life coverage terminated on January 1, 2023; that Decedent died on February 16, 2023; and that Decedent made no continuation or conversion election before his death. (DE 1-1 ¶¶ 5–6.) The Complaint does not allege that Decedent relied on any representation by MetLife before coverage ended, nor does it allege that MetLife undertook any obligation to provide coverage apart from administering the terms of the policy.

Instead, Plaintiff relies on generalized descriptions contained in the PEBA Insurance Benefits Guide and on post-death communications and billing activity, none of which are alleged to have induced action or forbearance by Decedent before his death.

South Carolina law recognizes no free-standing duty on the part of an insurer to advise an insured regarding coverage options absent a specific undertaking. *See Trotter v. State Farm Mut. Auto. Ins. Co.*, 377 S.E.2d 343, 347 (S.C. Ct. App. 1988).

---

[3] For clarity, the Court does not apply the doctrine of law of the case or issue preclusion to bar Plaintiff's newly asserted tort theories. The Court references its prior decision solely to identify factual determinations that Plaintiff does not materially dispute here. Even when these claims are analyzed independently and without preclusive effect, they necessarily depend on the same undisputed facts concerning the termination of coverage and the absence of any valid continuation or conversion election before Decedent's death. Under South Carolina law, tort liability cannot depend on conduct that presupposes the existence of insurance coverage where no such coverage existed and no legally effective act could have brought coverage into existence. *See Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 346, 384 S.E.2d 730, 736 (1989).

10

Plaintiff alleges no special circumstance—such as a fiduciary relationship, affirmative undertaking, or separate advisory agreement—that could create such a duty under *Steinke*'s framework. Nor could Plaintiff, because his role as personal representative does not confer greater rights than the Decedent possessed during life.

Accepting all well-pleaded facts as true, the Complaint does not plausibly allege a tort duty arising independently of the insurance contract, nor does it allege reliance or causation sufficient to support recovery in tort. Absent a duty imposed by statute, common law, or voluntary undertaking, Plaintiff's negligence claim fails as a matter of law.

### 2. No Independent Duty Exists Under Negligent Misrepresentation Principles

Plaintiff's negligent misrepresentation claim fails for an independent and dispositive reason: the Complaint does not plausibly allege justifiable reliance. To state such a claim under South Carolina law, a plaintiff must allege: "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation." *deBondt v. Carlton Motorcars, Inc.*, 342 S.C. 254, 266–67, 536 S.E.2d 399, 405 (Ct. App. 2000).

The Complaint does not allege that MetLife made any misrepresentation to Decedent before the termination of coverage or before his death, nor does it allege

11

that Decedent relied on any statement by MetLife in deciding whether to continue or convert coverage. Instead, Plaintiff relies on post-death administrative correspondence, including billing notices and a coverage confirmation letter generated after Plaintiff submitted an unauthorized continuation form.

As *Cruz v. City of Columbia* instructs, reliance is unreasonable as a matter of law where the alleged representation could not lawfully bind the defendant or effect the claimed benefit. 443 S.C. 201, 206–08, 904 S.E.2d 451, 453–54 (2024). Post-death communications cannot induce reliance by the Decedent, nor can they create insurance coverage where the governing policy required affirmative action during life and where no legally effective act occurred before death.

Plaintiff's status as personal representative does not alter this analysis. As *Cruz* makes clear, estoppel-based and reliance-based doctrines do not permit a party to obtain benefits that could not lawfully arise under the governing legal framework. Reliance on administrative error or post-loss correspondence, where coverage had terminated by operation of the policy, is not justifiable as a matter of law and cannot support a claim for negligent misrepresentation.

Accordingly, even accepting all well-pleaded facts as true, the Complaint fails to allege reliance or causation sufficient to support a negligent misrepresentation claim.

## C.     Promissory Estoppel Principles

Plaintiff's promissory estoppel claim fails as a matter of law. Promissory estoppel is an equitable doctrine "designed for the rare instance when equity's aid is

necessary to prevent the rank injustice that would ensue if a party could avoid being held to a clear promise he made on which the other party foreseeably and reasonably relied to his detriment." *Cruz v. City of Columbia*, 443 S.C. 201, 205–06, 904 S.E.2d 451, 453 (2024). The essential elements include an unambiguous promise, reasonable and foreseeable reliance, and injury resulting from that reliance. *Id.*; *see also Thomerson v. DeVito*, 430 S.C. 246, 255–56, 844 S.E.2d 378, 383 (2020).

As pleaded, the Complaint does not allege that MetLife made any clear or unambiguous promise to Decedent before the termination of coverage or before his death. Nor does it allege that Decedent relied on any promise in deciding whether to continue or convert coverage. Instead, the Complaint affirmatively alleges that no continuation or conversion election was made during Decedent's lifetime and that Plaintiff's attempted enrollment occurred only after Decedent's death, when no legally effective act could alter Decedent's coverage status.

Plaintiff's reliance on post-death communications and billing activity fares no better. As *Cruz* makes clear, reliance is unreasonable as a matter of law where the alleged promise could not lawfully bind the promisor or effect the claimed benefit. 443 S.C. at 206–08, 904 S.E.2d at 453–54. Post-death administrative correspondence cannot induce reliance by the Decedent, nor can it create insurance coverage where none existed at the time of death and where the governing policy required affirmative action during life.

Promissory estoppel may not be used to create primary liability or insurance coverage that is foreclosed by the express terms of the policy. Allowing Plaintiff to

proceed on this theory would impermissibly transform a narrow equitable doctrine into a substitute for coverage that never existed, a result South Carolina law does not permit.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff has failed to plead facts sufficient to state a plausible claim for negligence, negligent misrepresentation, or promissory estoppel. Plaintiff's alleged injuries arise entirely from the loss of life insurance benefits governed by the group policy, and his tort theories are barred by the economic loss rule, unsupported by any independent duty, and otherwise deficient as a matter of law. Accordingly, Defendant Metropolitan Life Insurance Company's Motion to Dismiss (DE 7) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
December 17, 2025